# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

    v.

XAVIAR MICHAEL BABUDAR,

               Defendant.

Case No. 23-00181-01-CR-W-HFS
Case No. 23-CR-075-JFH (NDOK)

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) and Rule 20 of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Patrick D. Daly and Stephanie C. Bradshaw, Assistant United States Attorneys, and the defendant, Xaviar Michael Babudar, represented by Matthew T. Merryman.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** In Case No. 23-00181-01-CR-W-HFS (Western District of Missouri ("WDMO")), the defendant agrees to and hereby does plead guilty to Count One of the Indictment, charging him with a violation of 18 U.S.C. § 1956(a)(1)(B)(i), concealment money

laundering, and Count Twelve of the Indictment, charging him with a violation of 18 U.S.C. § 2314, interstate transportation of stolen property.

In Case No. 23-CR-075-JFH (Northern District of Oklahoma ("NDOK")) (case transferred pursuant to Rule 20), the defendant agrees to and hereby does plead guilty to Count One of the NDOK Indictment, charging him with a violation of 18 U.S.C. § 2113(a), bank robbery.

The defendant also agrees to the entry of an order of restitution in the amount of at least $532,675. The defendant also admits Forfeiture Allegation One of the WDMO Indictment and agrees to forfeit to the United States an autographed painting of Patrick L. Mahomes II that has been recovered by the Federal Bureau of Investigation, as property involved in and/or traceable to money laundering activity.

By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

**3.** **Factual Basis for Guilty Plea.**   The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

Defendant XAVIAR MICHAEL BABUDAR (hereinafter "Babudar" and "Defendant") admits to the following facts:

### 23-00181-01-CR-W-HFS (Western District of Missouri)

Defendant admits that, on March 1, 2022, he departed Independence, Missouri, for Clive, Iowa. Defendant further admits that on March 2, 2022, he robbed the Great Western Bank ("GWB"),  located at 13150 Hickman Road, Clive, Iowa, and took and carried away $70,000 in U.S. Currency from this bank.

Defendant admits that he entered the GWB with the intent to steal or purloin any money exceeding $1,000 in value in the care, custody, control, management, or possession of GWB, and did in fact take and carry away $70,000 in U.S. Currency from this bank. Defendant entered this bank wearing a ski mask, and handed the bank teller a note demanding money and indicating that he had a firearm. Defendant was given $70,000 in U.S. Currency, and left GWB on foot and fled from the area.

2

Defendant left behind one black glove and approximately $1,420 in U.S. Currency in $20 denominations in a wooded area near GWB. Defendant further admits that DNA recovered from this black glove matched DNA extracted from defendant.

Defendant further admits that between March 2 and March 17, 2022, he transported these stolen proceeds in interstate commerce, from Clive, Iowa, to Kansas City, Missouri, which is within the Western District of Missouri, all in violation of 18 U.S.C. § 2314.

Defendant further admits that on March 17, 2022, he deposited $30,000, which constituted stolen proceeds from the GWB robbery, into his Community America Credit Union ("CACU") money market savings account ending in x1480 ("CACU Account x1480"), and did so again with a separate deposit of $40,000 which constituted stolen proceeds from the GWB robbery on April 12, 2022, and that this was done with the intent to conceal the criminal nature of these proceeds, all in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### 23-CR-075-JFH (Northern District of Oklahoma)

Defendant admits that on December 16, 2022, he robbed the TTCU Federal Credit Union located at 13475 South Memorial Lane, Bixby, Oklahoma. Defendant further admits that he entered the TTCU Federal Credit Union, by force, violence, and intimidation, and that he took from the person and presence of another money belonging to and in the care, custody, control, management, or possession of TTCU Federal Credit Union, and did in fact take and carry away $139,500 in U.S. Currency from this credit union, all in violation of 18 U.S.C. § 2113(a). Defendant entered this credit union armed with what appeared to be a black handgun, jumped the teller counter, and ordered a bank employee at gunpoint to go to the credit union's vault. Once at the vault, Defendant demanded that bank employees open the vault and put the money from the vault into a plastic bag. During this robbery Defendant told credit union employees that if they did not comply he would shoot them.

Defendant further admits that he was arrested shortly after the robbery with a large bag in his possession, which contained $139,500 in one hundred ($100) dollar bills and $10,750 in fifty ($50) dollar bills, totaling $150,250 in U.S. Currency.

Defendant further admits that his vehicle, a 2019 Mazda 3 bearing Kansas license plate "KCC4EVR," was searched pursuant to a search warrant issued by the District Court of Tulsa County days after his arrest, and was found to contain the following items:

- Barstool Sportsbook Betslip for $20,000, dated November 19, 2022;
- FanDuel Betslip for $4,000, dated December 1, 2022;

3

- Community America Credit Union letter addressed to Defendant, pertaining to a $20,000.00 deposit, dated May 2, 2022;
- Community America Credit Union letter addressed to Defendant, pertaining to a $50,000.00 deposit, dated May 2, 2022; and
- Community America Credit Union letter dated February 3, 2022, addressed to Defendant, confirming a change in contact information for Defendant, which listed Defendant's telephone number.

Defendant further admits that his vehicle contained numerous pairs of goggles and gloves which he wore during a series of bank robberies through the Midwest throughout 2022 described below.

### Defendant Admits Committing Nine Additional Robberies, and Attempted Robberies, of Banks and Credit Unions (Relevant Conduct)

Defendant admits that in addition to the aforementioned robberies to which he is pleading guilty, he committed, or attempted to commit, nine additional robberies of banks and credit unions in addition to the two to which he is pleading guilty. Defendant admits the facts and circumstances as to each of these robberies and attempted robberies, which he admits will be considered relevant conduct pursuant to U.S.S.G. §1B1.3.

### First National Bank of Omaha (Omaha, Nebraska) (April 28, 2022)

Defendant admits that on April 28, 2022, he robbed the First National Bank of Omaha located at 16770 West Maple Road, Omaha, Nebraska. Defendant admits that he entered the bank armed with what appeared to be a firearm and ordered bank employees to open their vault. Defendant admits he stole approximately $170,860 from this bank. Defendant admits that upon leaving the bank, a dye pack exploded and he abandoned approximately $163,560 as a result.

### First Class Community Credit Union (West Des Moines, Iowa) (July 13, 2022)

Defendant admits that on July 13, 2022, he robbed the First Class Community Credit Union ("FCCCU") located at 2051 Westown Parkway, West Des Moines, Iowa. Defendant admits that he entered the credit union carrying what appeared to be a black and silver firearm and jumped over the teller counter, demanding employees open the vault. Defendant admits that FCCCU employees complied with this demand, and provided him with currency from the cash drawers and the credit union vault. Defendant admits he stole approximately $303,845 from this credit union. Defendant then left the credit union on foot and fled the area.

Defendant admits that he transported the stolen proceeds from this robbery on that

4

same date of the robbery in interstate commerce, from West Des Moines, Iowa, to Kansas City, Missouri, and began laundering this money through area casinos in the Western District of Missouri and elsewhere, and then deposited the cash he received from these casinos into his personal bank account. Defendant admits that on the following dates he engaged in the following transactions using the proceeds from the FCCCU robbery:

| Date of Transaction | Transaction | Amount |
|---|---|---|
| July 14, 2022 | Defendant deposited cash into CACU Account x1480 at Lee's Summit, Missouri branch of CACU | $23,000 |
| July 28, 2022 | Defendant deposited check from Harrah's Kansas City Casino (North Kansas City, Missouri) into CACU Account x1480 | $20,000 |
| July 28, 2022 | Defendant deposited check from Isle of Capri Kansas City (Kansas City, Missouri) Casino into CACU Account x1480 | $20,000 |
| August 5, 2022 | Defendant deposited check from Missouri Gaming Company (d/b/a Argosy Casino) (Riverside, Missouri) Casino into CACU Account x1480 at CACU Tiffany Springs branch | $30,000 |
| August 8, 2022 | Defendant deposited check from Missouri Gaming Company (d/b/a Argosy Casino) (Riverside, Missouri) Casino into CACU Account x1480 | $30,000 |
| August 10, 2022 | Defendant deposited check from Missouri Gaming Company (d/b/a Argosy Casino) (Riverside, Missouri) Casino into CACU Account x1480 at 40 Highway Hy-Vee branch in Independence, Missouri | $15,000 |

**The Tennessee Credit Union (Nashville, Tennessee) (November 17, 2022)**

Defendant admits that on November 17, 2022, he entered The Tennessee Credit Union ("TTCU") armed with what appeared to be a black and silver firearm and climbed over the bank teller counter. Defendant pressed the firearm against the teller's body and demanded that the credit union employees take him to the vault.

5

TTCU employees complied with Defendant's demands, provided him with cash from the teller drawers, and took him to the vault. Defendant told credit union employees that if he was given a dye pack he would "come back and put a bullet in your head." Defendant stole approximately $125,900 from this credit union. Defendant fled from the credit union on foot and a hat was recovered soon thereafter, and DNA extracted from this hat matched a DNA extraction from a glove recovered after Defendant's March 2, 2022, robbery of GWB.

Defendant further admits that he transported in interstate commerce, from Tennessee to Kansas City, Missouri, the money he stole from this credit union, and that on November 22, 2022, he purchased $20,000 in casino chips at Harrah's North Kansas City using the proceeds from the TTCU robbery.

### Wings Financial Credit Union (Savage, Minnesota) (November 29, 2022)

Defendant admits that on November 29, 2022, he entered the Wings Financial Credit Union, located at 14411 Highway 13 South, Savage, Minnesota, intending to steal and take away money belonging to this institution. Defendant entered this credit union with what appeared to be a firearm and demanded that credit union employees open the vault. Defendant then fled from the credit union after seeing the vault only held small bills, and he left the credit union on foot and fled from the area.

### Royal Credit Union (Apple Valley, Minnesota) (November 29, 2022)

Defendant admits that on November 29, 2022, after attempting the robbery of the Wings Financial Credit Union, he entered the Royal Credit Union, located at 14295 Cedar Avenue, Apple Valley, Minnesota, intending to steal and take away money belonging to this institution. Defendant entered this credit union with what appeared to be a firearm and demanded that credit union employees open the vault. When he saw the vault only contained small bills, defendant demanded $100 bills, and then credit union employees told him that they did not keep $100 bills in the vault. Defendant then left the bank on foot and fled the area.

### First Interstate Bank (Clive, Iowa) (November 30, 2022)

Defendant admits that on November 30, 2022, the day after his two unsuccessful attempted credit union robberies in Minnesota, he robbed the First Interstate Bank ("FIB") located at 13150 Hickman Road, Clive, Iowa, of $25,000. This FIB location was the same location that Defendant robbed on March 2, 2022, when this branch was operating as Great Western Bank. Defendant entered the bank carrying what appeared to be a firearm and jumped over the teller counter. Defendant ordered the bank employees, at gunpoint, to open the vault. Defendant then fled the area on foot after the bank employees gave him $25,000 in U.S. Currency.

6

Defendant further admits that he transported in interstate commerce, from Clive, Iowa to Kansas City, Missouri, the money he stole from FIB. Defendant further admits that on the same date of the robbery, he deposited approximately $8,000 in cash into his Mazuma Account x8432 at the Mazuma Crossroads Kansas City, Missouri branch, and that on December 8, 2022, he deposited approximately $5,000 into his Mazuma Account x8432 at the Mazuma East Lee's Summit, Missouri branch.

### Pinnacle Bank (Papillion, Nebraska) (December 15, 2022)

Defendant admits that on December 15, 2022, he approached the Pinnacle Bank in Papillion, Nebraska with the intent of robbing this bank. At approximately 1:55 p.m., Defendant entered the vestibule area of Pinnacle Bank and pulled on the doors, but was unable to open them. Defendant then left the area. Defendant admits that his attempted entry of the Pinnacle Bank in Papillion, Nebraska, occurred the day before he robbed the TTCU Federal Credit Union in Bixby, Oklahoma, on December 16, 2022.

### Heritage Bank (Sparks, Nevada) (June 8, 2023)

Defendant admits that he robbed two separate banks subsequent to cutting his ankle monitor in Oklahoma and fleeing from the prosecution of his December 16, 2022, robbery of the TTCU Federal Credit Union in Bixby, Oklahoma.

Defendant further admits that on June 8, 2023, he robbed Heritage Bank, located at 330 Los Altos Parkway, Sparks, Nevada, of $1,100. Defendant entered this bank with the intention of stealing the money in the care, custody, control, management, and possession of Heritage Bank, and did in fact take and carry away $1,100 in U.S. Currency. Defendant entered the bank wearing a beanie, a Covid-19 mask, a blue long-sleeved shirt, khaki pants, and a fanny pack. Defendant showed a note to the Heritage Bank teller that was composed on his cellular telephone which demanded money from the teller. The Heritage Bank teller gave Defendant $1,100 in U.S. Currency in response to Defendant's demand, and Defendant then fled the bank.

### U.S. Bank (El Dorado Hills, California) (July 3, 2023)

Defendant admits that on July 3, 2023, he robbed U.S. Bank, located at 2207 Francisco Drive, El Dorado Hills, California, of $950. Defendant entered this bank with the intention of stealing the money in the care, custody, control, management, and possession of U.S. Bank, and did in fact take and carry away $950 in U.S. Currency. Defendant entered the bank wearing a grey hooded sweatshirt, a Covid-19 mask, and a yellow reflective vest. Defendant showed a note to the U.S. Bank teller that was composed on his cellular telephone which demanded money from

7

the teller. The U.S. Bank teller gave Defendant $950 in U.S. Currency in response to Defendant's demand, and Defendant then fled the bank.

### Defendant Admits that All Affected Banks and Credit Unions Are Federally Insured

Defendant admits that on the respective dates listed above, the Great Western Bank, First National Bank of Omaha, First Interstate Bank, Heritage Bank, Pinnacle Bank, and U.S. Bank were organized under the laws of the United States, and were each institutions the deposits of which were insured by the Federal Deposit Insurance Corporation, and are banks as defined under 18 U.S.C. § 2113(f).

Defendant admits that on the respective dates listed above, First Class Community Credit Union, The Tennessee Credit Union, Wings Financial Credit Union, Royal Credit Union, and TTCU were State-chartered credit unions, the accounts of which were insured by the National Credit Union Administration Board, and are credit unions as defined under 18 U.S.C. § 2113(g).

4. **Use of Factual Admissions.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. §1B1.3. The defendant acknowledges and understands that other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. §1B1.3 or part of the "offense of conviction" pursuant to U.S.S.G. §1B1.2, and may be used by the Court in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Indictment, Case No. 23-00181-01-CR-W-HFS, charging him concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), the maximum penalty the Court may impose is not more than twenty years of imprisonment, not more than a $500,000 fine and/or

8

twice the value of the property involved in the transaction, and not more than three years of supervised release.

The defendant understands that upon his plea of guilty to Count Twelve of the Indictment, Case No. 23-00181-01-CR-W-HFS, charging him interstate transportation of stolen property, in violation of 18 U.S.C. § 2314, the maximum penalty the Court may impose is not more than ten years of imprisonment, not more than a $250,000 fine, and not more than three years of supervised release.

The defendant further understands that upon his plea of guilty to Count One of the Indictment from the Northern District of Oklahoma, Case No. 23-CR-075-JFH (NDOK), charging him with a violation of 18 U.S.C. § 2113(a), bank robbery, the maximum penalty the Court may impose is not more than twenty years of imprisonment, not more than a $250,000 fine, and not more than three years of supervised release.

The Court must order restitution and a $100 mandatory special assessment per felony count of conviction that must be paid in full at the time of sentencing.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

   a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

   b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

   c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three (3) years; that the Court must impose a period

9

of supervised release if a sentence of imprisonment of more than one year is imposed;

    d.   if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two (2) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three (3) years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e.   the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f.   any sentence of imprisonment imposed by the Court will not allow for parole;

    g.   the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

    h.   the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court;

    i.   the defendant agrees that the United States may institute civil, judicial, or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings;

    j.   the defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including but not limited to the following specific property: an autographed painting of Patrick L. Mahomes II that has been recovered by the Federal Bureau of Investigation. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k.    the defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he has or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from March 1, 2022, to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

l.    the defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing; and

m.    the defendant states that he is the sole and rightful owner of any forfeitable property, and that, to the best of his knowledge, no one else has any ownership or other interest in the property. In the event any federal, state or local law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest he has in such property and consents to the destruction or any other disposition of the property by the federal, state or local agency without further notice or obligation whatsoever owing to the defendant.

7.    **Government's Agreements.**    Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the Indictment for which it has venue and which arose out of the defendant's conduct described above. The Government agrees to dismiss Counts Two through Eleven, Thirteen through Nineteen, and Forfeiture Allegation Two of the Indictment in Case No. 23-00181-01-CR-W-HFS at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises

11

made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives the right to challenge the initiation of dismissed or additional charges against him if the defendant breaches this agreement. The defendant expressly waives the right to assert a statute of limitations defense if dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

The United States Attorney's Office for the Southern District of Iowa agrees not to separately prosecute the defendant for his robberies of the Great Western Bank in Clive, Iowa on March 2, 2022, the First Class Community Credit Union in West Des Moines, Iowa, on July 13, 2022, and the First Interstate Bank in Clive, Iowa, on November 30, 2022, so long as the defendant admits the facts and circumstances of these robberies are to be included as relevant conduct in formulating a sentence, that the restitution order reflects the loss sustained by those financial institutions as well as any losses incurred by individual victims to the extent compensable under the law, and that the defendant abides by the terms of the plea agreement with the United States Attorney's Office for the Western District of Missouri.

The United States Attorney's Office for the District of Nebraska agrees not to separately prosecute the defendant for his robbery of the First National Bank of Omaha in Omaha, Nebraska on April 28, 2022, as well as the attempted robbery of Pinnacle Bank in Papillion, Nebraska on December 15, 2022, so long as the defendant admits the facts and circumstances of these robberies are to be included as relevant conduct in formulating a sentence, that the restitution order reflects

12

the loss sustained by those financial institutions as well as any losses incurred by individual victims to the extent compensable under the law, and that the defendant abides by the terms of the plea agreement with the United States Attorney's Office for the Western District of Missouri.

The United States Attorney's Office for the Middle District of Tennessee agrees not to separately prosecute the defendant for his robbery of The Tennessee Credit Union in Nashville, Tennessee on November 17, 2022, so long as the defendant admits the facts and circumstances of this robbery are to be included as relevant conduct in formulating a sentence, that the restitution order reflects the loss sustained by this financial institution as well as any losses incurred by individual victims to the extent compensable under the law, and that the defendant abides by the terms of the plea agreement with the United States Attorney's Office for the Western District of Missouri.

The United States Attorney's Office for the District of Minnesota agrees not to separately prosecute the defendant for his attempted robberies of the Wings Financial Credit Union in Savage, Minnesota, and the Royal Credit Union in Apple Valley, Minnesota on November 29, 2022, so long as the defendant admits the facts and circumstances of these robberies are to be included as relevant conduct in formulating a sentence, that the restitution order reflects the loss sustained by those financial institutions as well as any losses incurred by individual victims to the extent compensable under the law, and that the defendant abides by the terms of the plea agreement with the United States Attorney's Office for the Western District of Missouri.

The United States Attorney's Office for the District of Nevada agrees not to separately prosecute the defendant for his robbery of Heritage Bank in Sparks, Nevada on June 8, 2023, so long as the defendant admits the facts and circumstances of this robbery are to be included as

13

relevant conduct in formulating a sentence, that the restitution order reflects the loss sustained by this financial institution as well as any losses incurred by individual victims to the extent compensable under the law, and that the defendant abides by the terms of the plea agreement with the United States Attorney's Office for the Western District of Missouri.

The United States Attorney's Office for the Eastern District of California agrees not to separately prosecute the defendant for his robbery of U.S. Bank in El Dorado Hills, California on July 3, 2023, so long as the defendant admits the facts and circumstances of this robbery are to be included as relevant conduct in formulating a sentence, that the restitution order reflects the loss sustained by this financial institution as well as any losses incurred by individual victims to the extent compensable under the law, and that the defendant abides by the terms of the plea agreement with the United States Attorney's Office for the Western District of Missouri.

**8.** **<u>Preparation of Presentence Report.</u>** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to the limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

14

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

b. The applicable Guidelines section for the offense of conviction is U.S.S.G. §2B3.1(a), which provides for a base offense level of 20;

c. Because the offense involved the taking of the property of a financial institution, and the taking of the property was an object of the offense, U.S.S.G. §2B3.1(b)(1) applies, which provides for a 2-level enhancement;

d. Because defendant otherwise used a dangerous weapon in the commission of these robberies, U.S.S.G. §2B3.1(b)(2)(D) applies, which provides for a 4-level enhancement;

e. Because defendant physically restrained a person to facilitate commission of the offense or to facilitate escape, U.S.S.G. §2B3.1(b)(4)(B) applies, which provides for a 2-level enhancement;

15

f.    Because the loss exceeded $50,000, U.S.S.G. §2B3.1(b)(7)(C) applies, which provides for a 2-level enhancement;

g.    Because defendant is charged, and admits his guilt relating to his perpetration of multiple robberies which he admits are to be included as relevant conduct, U.S.S.G. §3D1.2(d) & §3D1.4 provides for a 5-level increase in the offense level, resulting in a combined offense level of 35;

h.    Because defendant fled from prosecution during the investigation and pendency of criminal charges against him, he willfully obstructed or impeded, and attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's offense of conviction, U.S.S.G. §3C1.1 applies, which provides for a 2-level enhancement;

i.    The defendant has admitted his guilt and clearly accepted responsibility for his actions and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

j.    While the parties recognize there might be other specific aggravating or mitigating U.S.S.G. applications, the parties agree that each side shall be free to argue their respective positions of any additional Guidelines issues at the sentencing hearing;

k.    There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

l.    The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

16

m. The parties agree to recommend that the sentences imposed for Counts One and Twelve of the Indictment from the Western District of Missouri and Count One of the Indictment from the Northern District of Oklahoma should run concurrently with each other;

n. The parties are not bound to recommend a sentence within the Guidelines range. The United States may seek an upward departure from the Guidelines or a sentence outside the Guidelines range. The defendant may seek a downward variance or departure below the Guidelines. This agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

o. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

p. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicabl

e provision of the Guidelines changes after the execution of this plea agreement, then any

17

request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

      a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

      b. comment on the evidence supporting the charges in the Indictment;

      c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

      d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

      a. the right to plead not guilty and to persist in a plea of not guilty;

      b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

      c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

      d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

19

a.    The Court may order restitution to the victims of the offenses to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity. Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees to pay restitution in the amount of $532,675, which includes the loss related to the offenses to which he is pleading guilty and loss from related criminal activity.

b.    The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c.    The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.  The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d.    Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e.    At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f.    The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g.    The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $300 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h.    The defendant certifies that he has made no transfer of assets or

20

property for the purpose of (1) evading financial obligations created by this agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i.   In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets.   In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

**17.** **Waiver of FOIA Request.**   The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18.** **Waiver of Claim for Attorney's Fees.**   The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

21

**19.** **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a Grand Jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20.** **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorney or any other party to induce him to enter his plea of guilty.

22

**21.  No Undisclosed Terms.**   The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22.  Standard of Interpretation.**   The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

23

TERESA A. MOORE
United States Attorney, Western District of
Missouri

Dated: 2/28/2024

Patrick D. Daly

PATRICK D. DALY
Assistant United States Attorney, Western
District of Missouri

Dated: 2/28/2024

STEPHANIE C. BRADSHAW
Assistant United States Attorney, Western
District of Missouri

CLINTON J. JOHNSON
United States Attorney, Northern District of
Oklahoma

Dated: 2/27/24

Eric O. Johnston

ERIC O. JOHNSTON
Assistant United States Attorney, Northern
District of Oklahoma

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 2/28/24

Xavier Babudar

XAVIAR MICHAEL BABUDAR
Defendant

I am defendant Xaviar Michael Babudar's attorney. I have fully explained to Mr. Babudar his rights with respect to the offense charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Mr. Babudar's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 2-28-24

MATTHEW T. MERRYMAN
Attorney for Defendant

24